IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00441-REB-MJW

ERNEST WEST,

Plaintiff,

v.

JOE ORTIZ, et al.,

Defendants.

---

**RECOMMENDATIONS ON
(1) RENEWED MOTION TO DISMISS FROM DEFENDANTS CORRECTIONS
CORPORATION OF AMERICA AND WARDEN JIM KEITH (Docket No. 104),
(2) CDOC DEFENDANTS' RENEWED MOTION TO DISMISS THIRD AMENDED
COMPLAINT (Docket No. 105), and
(3) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(Contained in his "Conbined Response" - Docket No. 109)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**


This case is before this court pursuant to an Order of Reference to United States

Magistrate Judge issued by District Judge Robert E. Blackburn on August 27, 2007.

(Docket No. 107).

The operative pleading is the Third Amended Prisoner Complaint and Jury

Demand (Docket No. 20) which was filed on August 26, 2005, by plaintiff through

counsel. Plaintiff's counsel's subsequent motion to withdraw (Docket No. 51) was

granted by this court on February 15, 2006 (Docket No. 53). Since that time, plaintiff

has proceeded without counsel.

In an Order filed on March 22, 2006, Judge Blackburn dismissed without prejudice plaintiff's First Claim for Relief, alleging violation of his civil rights pursuant to 28 U.S.C. § 1983, for failure to exhaust administrative remedies. In addition, plaintiff's Second Claim for Relief, alleging negligence resulting in bodily injury under Colorado state law, was dismissed without prejudice. (Docket No. 59 at 6). Ten months after that ruling, and while plaintiff's appeal was pending, the United States Supreme Court in Jones v. Bock, 127 S. Ct. 910 (2007), abrogated two of the Tenth Circuit cases upon which the dismissal order was based.

As a result, the Tenth Circuit held "that the district court's allocation of the burden to Mr. West to prove exhaustion under *Steele* [*v. Federal Bureau of Prisons*, 355 F.3d 1204 (10th Cir. 2003)], as well as the court's dismissal of both exhausted and unexhausted claims pursuant to *Ross* [*v. County of Bernalillo*, 365 F.3d 1181 (10th Cir. 2004)], are erroneous under *Jones.* On remand, the district court should consider the exhaustion issue in light of *Jones.*" (West v, Ortiz, No. 06-1192, 2007 WL 706924 (10th Cir. Mar. 9, 2007); Docket No. 91 at 15). The court left it "to the district court to determine in the first instance the applicability of the PLRA's [Prison Litigation Reform Act of 1995] exhaustion requirement because that determination requires the resolution of fact questions concerning Mr. West's precise incarceration status when he mailed or filed the original complaint. *See Norton* [*v. City of Marietta*], 432 F.3d [1145] at 1150 [10th Cir. 2005] (PLRA's exhaustion requirement inapplicable if plaintiff not confined in a jail, prison, or other correctional facility when he brought suit). The district court also should consider giving leave to the parties to file additional briefs concerning whether

Mr. West was on parole when he filed this action and whether such status subjects him to the PLRA's exhaustion requirement, as the CDOC defendants have argued in their supplemental appellate brief." (Docket No. 91 at 16).

Following remand, this court granted the Plaintiff's Motion of Status (Docket No. 92) to the extent that a status conference was held on August 6, 2007, at 9:30 a.m. (Docket No. 101). During that conference, the court gave the defendants until August 27, 2007, to file their motions for dismissal and directed that responses and replies were to be filed in accordance with the local rules. (Docket No. 103, Courtroom Minutes).

Now before the court for report and recommendation are two motions to dismiss, namely, a Renewed Motion to Dismiss From Defendants Corrections Corporation of America and Warden Jim Keith (Warden of the Bent County Correctional Facility [hereinafter "BCCF"]) (hereinafter referred to as "the CCA defendants") (Docket No. 104) and the CDOC Defendants' Renewed Motion to Dismiss Third Amended Complaint (Docket No. 105) and Memorandum Brief in Support thereof (Docket No. 105) which were filed by defendants Joe Ortiz (the Executive Director of the Colorado Department of Corrections [hereinafter "CDOC"]), Carl Zenon (Warden of the Four Mile Correctional Center [hereinafter "FMCC"]), and Joe Leyba (Warden of the Arkansas Valley Correctional Facility [hereinafter "AVCF"]) (hereinafter collectively referred to as "the CDOC defendants"). The pro se plaintiff filed a "Conbined [sic] Response Motions Against CDOC Defendants; Motion to Summary Judgment" (Docket No. 109) at the

conclusion of which he also appears to be moving for summary judgment.[1]  The CCA

defendants then filed a Reply in Support of Renewed Motion to Dismiss (Docket No.

110).  Plaintiff then filed a "Reply Motion to Summary Judgment Against Defendants

Corrections Corp. of American and Warden Jim Keith" (Docket No. 111), which has

been construed as a sur-reply, which, while normally not accepted by the court, has

been considered by this court given plaintiff's pro se status.

The court has reviewed the motions, the brief in support of one of the motions,

the combined response, the reply, and the sur-reply and has considered applicable

Federal Rules of Civil Procedure, case law, and statutes, as well as the court's file.

The court now being fulling informed makes the following findings, conclusions of law,

and recommendations.

Plaintiff claims the defendants violated his civil rights by failing to protect him

from racially motivated assaults by other inmates while he was incarcerated at various

correctional facilities in Colorado from 2002 through 2004.  More specifically, plaintiff

asserts the following in his Third Amended Complaint (Docket No. 20).  Plaintiff is an

African American.  (Third Am. Compl. [hereinafter "Compl."] at ¶ 12).  Between January

2, 2002, and March 2, 2005, he was an inmate sentenced to the CDOC and housed in

various correctional facilities operated by the CDOC or defendant CCA.  (Compl. at ¶

11).  Starting in or around May 2002 plaintiff was subjected to threats and harassment

by other inmates who are self-proclaimed members of the Ku Klux Klan and various

[1]Pursuant to D.C.COLO.LCivR 7.1(C), however, "[a] motion shall not be included
in a response or reply to the original motion.  A motion shall be made in a separate
paper."  D.C.COLO.LCivR 7.1(C).

Hispanic inmates. (Compl. at ¶ 12). Plaintiff filed grievances concerning this behavior and twice asked to file charges on those inmates, but those requests were denied. (Compl. at ¶ 13). Plaintiff also filed grievances about six additional assaults by inmates. (Compl. at ¶ 14).

On October 7, 2004, plaintiff received a response from defendants written by a CDOC Grievance Officer stating "in order for any action to be taken regarding offender attacks upon you(, you) [sic] must provide to security staff the names and details of the attack. . . . Your request for relief is denied. This is the final administrative response in this matter and you have exhausted your administrative remedies." (Compl. at ¶ 15).

While housed at FMCF on or about September 6, 2003, plaintiff was struck in the face by an Hispanic inmate. Rather than addressing the assault, defendants had plaintiff handcuffed and placed in isolation for eight days. (Compl. at ¶ 16). The following month, while housed at BCCF, plaintiff was assaulted by an inmate and suffered a fractured rib. Plaintiff was placed into segregation until he signed an affidavit agreeing not to prosecute the inmate. (Compl. at ¶ 17). Four months later, on or about February 14, 2004, while still housed at BCCF, plaintiff was assaulted by another inmate and suffered two broken fingers on his left hand. (Compl. at ¶ 18).

About three months later, in late May or early June, this time while housed in AVCF, plaintiff heard rumors of a planned assault on him and asked "staff" for protection. Plaintiff was told by "staff," "we've heard about you, you're on your own." (Compl. at ¶ 19). On or around June 5, 2004, while housed in AVCF, he was assaulted by another inmate and suffered a permanent, partial loss of vision in his right eye and

injury to his left ankle and back. This assault was observed by a corrections officer, and the other inmate was charged. (Compl. at ¶ 20).

Three months later, on or around September 1, 2004, while still housed in AVCF, plaintiff was moved to a different cell. Upon entering that cell with his belongings, plaintiff was confronted by his new cell-mate who advised him that he knew the plaintiff had "ratted" on a friend of his and told plaintiff to "pack your shit and get out of here." (Compl. at ¶ 21). When plaintiff advised AVCF "staff" of the confrontation and plaintiff's fear of assault, he was told to enter the cell or face discipline. Plaintiff entered the cell and was assaulted, causing injuries to his face, head, and left eye. (Compl. at ¶ 22). Charges were subsequently filed against the new cell-mate. (Compl. at ¶ 23).

According to plaintiff, "[t]hese incidents involved several employees of CDOC and CCA, however, at this time the identities of these individuals is unknown." Furthermore, plaintiff asserts: "[t]he Defendants, CDOC and CCA, have established a policy, pattern and/or practice of not maintaining or inadequately supervising their employees in order to properly provide protection to inmates in their custody." (Compl. at ¶ 26). In addition, "[t]he Defendants, CDOC and CCA have a policy of not promptly and adequately investigating and/or responding to articulated fears of assault and requests for protection, and thereby ratified such conduct." (Compl. at ¶ 27).

Plaintiff raises two claims for relief. In his first claim, plaintiff alleges that defendants violated 42 U.S.C. § 1983 by subjecting him "to deprivation of the rights and privileges secured by the Constitution and laws of the United States, including but not

limited to his right to protection from assault; to due process of law (procedural and/or substantive); to be free from unreasonable police conduct; and to be protected against injury under the 8th Amendment prohibitions against Cruel and Unusual Punishment." (Compl. at ¶ 31). According to plaintiff:

> This includes, but is not limited to, the facts that:
>
> A.    Defendants knew or should have know that there exists a high likelihood of assault among inmates in prison settings.
>
> B.    Defendants disregarded Plaintiff's pleas for safety knowing that Plaintiff had been assaulted previously.
>
> C.    Defendants' failure to provide safety measures and prevent further assaults upon the Plaintiff indicates a deliberate indifference and/or reckless disregard to his rights, feelings and/or safety of Plaintiff.
>
> . . . Said deprivation of Plaintiff's civil rights was the result of Defendants [sic] failure to properly supervise correctional officers and/or employees. This includes but is not limited to: failure to correct known deficiencies in the grievance procedures; failing to adequately instruct, monitor and supervise employees; failing to provide protection from the threat of assault, and failure to prevent injury/assault upon Plaintiff.

(Compl. at ¶¶ 32-33).

In his second claim for relief, which is against solely the CCA defendants and unnamed CCA correctional officers and employees, plaintiff raises a state law claim of negligence. (Compl. at 7).

Plaintiff seeks unspecified compensatory damages, attorney fees and costs, interest, appropriate equitable and/or injunctive relief, and any such other and further relief as the court deems fit. (Compl. at 8-9). Named as defendants are the CCA and CDOC defendants (Compl. at ¶¶ 2-6) and John/Jane Does 1 - X, who "are a series of

fictitious names for the correctional officers and/or other employees of above Defendants who participated in the wrongful conduct alleged herein. The identity of these Defendants is currently unknown." (Compl. at ¶ 7). The four individual defendants (Ortiz, Zenon, Leyba, and Keith) are named in their "official capacity." (See Compl. at ¶¶ 2, 3, 4, and 6).

The CCA defendants seek dismissal, asserting plaintiff's claims as articulated in the Third Amended Complaint fail as a matter of law on the following grounds: (1) plaintiff fails to state a constitutional violation; (2) plaintiff fails to allege any personal participation on the part of Warden Keith; (3) even assuming plaintiff can state a violation and that Warden Keith personally participated in the violation, plaintiff cannot establish that Keith acted with the requisite deliberate indifference necessary to sustain a claim against him, and (4) plaintiff fails to establish any liability against defendant CCA. Further, the CCA defendants assert that if this court determines that plaintiff's § 1983 claim against them is insufficient to state a claim, that the court should refuse to accept supplemental jurisdiction over plaintiff's state tort claim.

The CDOC defendants deny the material allegations in the Third Amended Complaint but assert that even if such allegations are accepted as true, the one claim asserted against them by the plaintiff fails as a matter of law because (1) the claim is barred by the Eleventh Amendment; (2) the claim fails for lack of personal participation; (3) the claim fails because plaintiff failed to exhaust administrative remedies; and (4) the claim for equitable/injunctive relief is moot.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. <u>Morse v. Regents of the Univ. of Colo.</u>, 154 F.3d 1124, 1126 (10th Cir. 1998); <u>Seamons v. Snow</u>, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" <u>Cutter v. RailAmerica, Inc.</u>, 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp.</u>, 127 S.Ct. At 1974 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting <u>Bell Atlantic Corp.</u>, 127 S.Ct. at 1974).

Even though the operative pleading was drafted for plaintiff by counsel, since

the plaintiff is currently proceeding without counsel, out of utmost caution, his pleading and response to the motions have been construed liberally and held to a less stringent standard than formal documents drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

**Exhaustion**

The CDOC defendants assert that the pleadings and time computation report indicate that the plaintiff was an incarcerated inmate when he filed his "Prisoner Complaint."  These defendants correctly note that the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (emphasis added by defendants).  Furthermore, the PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  Therefore, the requirement that a prisoner exhaust administrative remedies

hinges upon his custodial status at the time the complaint is filed.  <u>Norton v. The City of</u> <u>Marietta Okla.</u>, 432 F.3d 1145, 1150 (10th Cir. 2005).  In addition, the "prison mailbox rule" has long been established in this circuit.  Under that "rule," an inmate who places a federal civil rights complaint in the prison's internal mail system will be treated as having "filed" that complaint on the date it is given to prison authorities for mailing to the court.  <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988): <u>Garcia v. Shanks</u>, 351 F.3d 468, 471 (10th Cir. 2003).

As noted by the CDOC defendants, Judge Blackburn previously ordered plaintiff to submit competent evidence regarding his custodial status as of the date this action was commenced which could include, but not be limited to, "(a) a certified copy of plaintiff's time computation records from the [CDOC]; or (b) a signed and notarized affidavit, or alternatively a declaration that complies in all particulars with the requirements of 28 U.S.C. § 1746, attesting to the required facts."  (Docket No. 73). Subsequently, attached to a Motion to Re-open Case at Entry Level at District Court, plaintiff submitted a certified CDOC Official Time Computation Report that indicated that he was incarcerated from January 2, 2002, until March 2, 2005, and was released on parole on March 2, 2005.  (Docket No. 81 at 3).  On the Certificate of Mailing attached to his original Prisoner Complaint, plaintiff states that it was mailed on March 2, 2005.  As noted by the CDOC defendants, on that pleading, under the section entitled "Parties," plaintiff's stated his current address as "304 Ray Sandoval St Salsenburg 81089," which is the address for the Huerfano Correctional Facility (Docket No. 3 at 2). Similarly, on the plaintiff's Prisoner's Motion and Affidavit for Leave to

Proceed Pursuant to 28 U.S.C. § 1915, plaintiff completed the form, stating it was "Executed at Huerfano CO. on March 2, 2005." (Docket No. 1 at 2).

In his combined response, plaintiff does not deny that his original Prisoner Complaint was mailed while he was incarcerated. Instead, he merely incorrectly asserts that it was proven in the Tenth Circuit "that it was in fact the named Defendants who were the ones that didn't exhaust their administrative remedies and not the Plaintiff. Not one time ever did the Defendants ever answer any of the Plaintiff's Step III Grievances in this lawsuit . . . ." (Docket No. 109 at 3).

Based upon the above, this court finds that the plaintiff was incarcerated when he mailed the original Prisoner Complaint. Furthermore, although the court did not receive the pleading until the next day, when plaintiff was no longer incarcerated, pursuant to the prison mailbox rule, the action was commenced as of the time plaintiff put it into the prison mailing system. Therefore, pursuant to the PLRA, this action with respect to prison conditions under section 1983 could not be brought until such administrative remedies as are available are exhausted. Based upon this finding, it is unnecessary to address defendants' alternate assertion that plaintiff was still required to exhaust administrative remedies as a parolee.

Pursuant to Jones, "the failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 127 S.Ct. at 921. Furthermore, the Tenth Circuit has held that as an affirmative defense, exhaustion must be raised an proven by the defendants. Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007). In view of Jones and

Roberts, it is a bit surprising that defendants did not submit anything, such as an

affidavit with supporting documentation, to establish as a matter of law that plaintiff

failed to exhaust his administrative remedies as to any or all of his claims. Instead,

their arguments were focused on whether plaintiff was an incarcerated inmate when he

filed his Prisoner Complaint. From the documents plaintiff submitted with his original

pleading, it appears that he may very well have exhausted some, but not all, of his

claims, but it is not plaintiff's burden to prove exhaustion.[2] The court cannot

_____

[2]"[O]nly in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse." Freeman v. Watkins, 479 F.3d 1257, (10th Cir. 2007) (quoting Aguilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)). The holding in Jones, however, "does not wholly foreclose the district court's ability to raise sua sponte the exhaustion requirement." Id. "Jones suggests that district courts can dismiss prisoner complaints for failure to state a claim if it is clear from the face of the complaint that the prisoner has not exhausted his administrative remedies. . . . However, courts also are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Aguilar-Avellaveda, 478 F.3d at 1225. The Tenth Circuit has held, however, that "a district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue." Id. (quotation and citation omitted). Here, plaintiff has been given more than adequate opportunity to address the exhaustion issue as it was raised in a first round of dispositive motions, then before the Tenth Circuit, and now again on a renewed round of dispositive motions.

The court takes judicial notice of an admission made by plaintiff in his Amended Complaint filed on May 9, 2005. (Docket No. 14). Under the heading "EXHAUSTION OF ADMINISTRATIVE REMEDIES" plaintiff significantly states:

> The first 5 assaults against me in the [CDOC] and C.C.A. facilities were not report [sic] through the grievance process. I was unaware at those time of the procedures to follow in th [sic] prison system. After May 24, 2004 and the incident on racial discrimination against Sergeant T. Grebenc, I was told by inmate staff in the law library at A.V.C.F. to file grievances upon incidences concerning civil matters against the Colorado Department of Corrections staff. . . . .

recommend dismissal on the basis of exhaustion based on the present motions.

**Eleventh Amendment**

    The CDOC individual defendants correctly assert that plaintiff's § 1983 claim

---

(Docket No. 14 at unnumbered page 5).

    Pursuant to <u>Jones</u>, in this Circuit there is no longer a "total exhaustion rule" in effect. Instead, the Court mandated "if a complaint contains both good and bad claim, . . . court[s] proceed[] with the good and leave[] the bad." <u>Id.</u> at 924. Here, plaintiff admitted in his Amended Complaint that he did not exhaust his claims concerning the first five assaults. A review of the documents attached to his original Prisoner Complaint shows that his first grievance concerning the string of assaults is dated June 21, 2004, and concerns an attack by another inmate on plaintiff on June 5, 2004, at AVCF. (Docket No. 3, unnumbered exhibits, Step 1 grievance number AV-04/05-008). In that grievance, plaintiff states:

        Violation of my civil rights on racial attacks: This is the 6ᵗʰ time that I've been assaulted by other white inmates since April 2002 off and on until June 5, 2004. Each time I was throwed [sic] into segragation [sic] "the hole" never for any other reasons this last assault white inmate almost punchture [sic] my right e ye out. Nove. 2003 I was assaulted by white inmate with a sock-lock causing fracture [sic] rib to my back on left side at Bent County, then in Feb. 2004 same incident. Something needs to be done in my behave [sic] from D.O.C.

(Attach. to Docket No. 3). Therefore, from the Amended Complaint, it appears that the plaintiff's § 1983 claims concerning the following alleged attacks, which allegedly occurred prior to the June 5, 2004, attack admittedly were not exhausted: attack on September 6, 2003, at FMCF (Docket No. 20 at ¶ 16), in October 2003 at BCCF (Docket No. 20 at ¶ 17), and on February 14, 2004, at BCCF (Docket No. 20 at ¶ 18). Consequently, the claims against defendants Zenon and Keith, Wardens of FMCF and BCCF, respectively, appear to have not been exhausted.

    Nevertheless, since the Amended Complaint has been superceded by subsequent amended pleadings, plaintiff's statement in the Amended Complaint may very well not be treated as a binding judicial admission, but could be treated as ordinary evidentiary admissions. <u>See</u> <u>O'Hearon v. Castleview Hosp.</u>, 156 F.3d 1244 (Table) (10ᵗʰ Cir. 1998). Since plaintiff has not been given an opportunity to respond to his admission concerning exhaustion that is contained in the Amended Complaint, the court will not recommend dismissal on exhaustion grounds at this time.

against them for monetary damages and/or retroactive imposition of injunctive relief is barred by the Eleventh Amendment and that the CDOC individual defendants sued in their official capacities are not "persons" for purposes of § 1983. The Third Amended Complaint on its face merely sues the individual defendants in their official, rather than their personal, capacities. (See Compl. at ¶¶ 2, 3, 4, and 6). It is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994). Therefore, it is recommended that the plaintiff's § 1983 claim for monetary relief from the individual CDOC defendants in their official capacities be dismissed.

The court notes that the Supreme Court has further stated that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" Will v. Michigan Dept. of State Police, 491 U.S. at 71 n.10. "The Eleventh Amendment does not generally bar actions for prospective injunctive relief where state officials have violated federal law." Montez v. Romer, 32 F. Supp.2d 1235, 1241 (D. Colo. 1999). In the Third Amended Complaint, plaintiff here seeks both monetary and injunctive relief.[3] Plaintiff, however, has been released from

---

[3]In his combined response, plaintiff seems to assert that he is not seeking injunctive relief in this action (Docket No. 109 at 4), but his Third Amended Complaint indicates to the contrary.

confinement, and thus his claim for injunctive relief is moot and should be dismissed.

Wirsching v. Colorado, 360 F.3d 1191, 1196 (10th Cir. 2004); Green v. Branson, 108

F.3d 1296, 1299-1300 (10th Cir. 1997).

Even if the court were to permit the plaintiff to amend his pleading yet again, this

time to bring his § 1983 claim against defendants in their personal capacity, for the

reasons set forth below, the § 1983 claim against the named defendants fails based

upon plaintiff's failure to assert the requisite personal participation.

**Personal Participation**

Another basis for dismissal argued in both motions is the plaintiff's failure to

allege personal participation by the individual defendants.  In response, plaintiff merely

asserts:

> As far as "personal participation," well that's a lie as well, according
> to the Administrative Regulation CDOC in filing the Grievance Procedure,
> AR #850-04, on page 5 section C, "responding to a grievance" 1A - Step
> 1 grievances shall be investigated and answered by the involved staff
> member together with a staff member appointed by the administrative
> head, or designee.  That would include the "officer" who is involed [sic] as
> well as the "Warden" him or herself.  1B-Step II grievances shall be
> investigated and answered by the administrative head "Warden" or
> designee the "Director of Prisons" office.  If the Defendants would have
> done their jobs as their [sic] paid to do by the tax payers [sic] money that
> would have put them in the position of "personal pacticipation [sic]".

(Docket No. 109 at 4).

"Individual liability under § 1983 must be based on personal involvement in the

alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir.

1997).  With regard to the liability of supervisors:

> Under § 1983, government officials are not vicariously liable for the

misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." . . . "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part." . . . .

Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . . In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .

In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . . In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted). Furthermore, even under the liberal pleading standards applied to

pro se litigants, "conclusory allegations without supporting factual averments are

insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d

at 1110.

"'[P]rison officials have a duty to protect prisoners from violence at the hands of

other prisoners.' . . . '[T]he failure to protect inmates from attacks by other inmates may

rise to an Eighth Amendment violation if the prison officials [sic] conduct amounts to an

obdurate and wanton disregard for the inmate's safety.'" MacKay v. Farnsworth, 48

F.3d 491, 492 (10th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825 (1994);

Northington v. Jackson, 973 F.2d 1518, 1525 (10th Cir. 1992)). "It is not, however,

every injury suffered by one prisoner at the hands of another than translates into

constitutional liability for prison officials responsible for the victim's safety." Farmer,

511 U.S. at 834. It is well-established that the prison official cannot be liable "unless

the official knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." Id. at

837. "This subjective standard requires a culpable state of mind on the part of the

official. . . . It is not satisfied by negligence (which, by definition, is an unreasonable

act or omission), or even gross negligence, or recklessness as defined by civil law."

Brigden v. State ex rel. Oklahoma Dept. of Corrections, 129 F.3d 130, *6 (Table) (10th

Cir. Oct. 29, 1997) (citing Farmer, 511 U.S. at 836).

Here, the allegations underlying plaintiff's claimed constitutional violations by the

named defendants are general, vague, speculative, and conclusory. There are

absolutely no factual averments in his Third Amended Complaint (or even in his

combined response to the motions to dismiss) that even suggest that the named

defendants had any actual knowledge, either through the grievance procedure or

otherwise, of facts from which the inference could be drawn that a substantial risk of

serious harm to plaintiff existed, including knowledge of the alleged inmate assaults on

the plaintiff at the various facilities, his purported request to AVCF "staff" for protection

in May or June 2004, his alleged notification to AVCF "staff" (identified in the combined

response as Captain Hall, a female officer) of his fear of assault upon entering a new

cell in September 2004, and any purported fear of imminent or continual danger outside

of the usual prison environment.  The administrative regulation cited by the plaintiff in

his combined response does not require review of grievances by the Wardens

themselves.  Therefore, it cannot be presumed that the defendant Wardens would

know about any grievances purportedly submitted by the plaintiff about the assaults

and any perceived threats to his safety.  Plaintiff has simply made no allegations that

suggest the moving defendants had knowledge of a credible substantial risk of serious

harm to the plaintiff.  See Minor v. Gunja, 2006 WL 1795128 (D. Colo. June 27, 2006)

(Plaintiff did not establish either prongs required for a failure to protect claim.  His

general concerns about being placed in a penitentiary do not provide sufficient indicia

that an identifiable threat to his safety existed of which Defendants had knowledge.

Plaintiff made no claim that Defendants were aware of a specific threat to his safety,

nor did he allege they were aware of specific risk and made a conscious decision not to

act to attempt to abate that risk.).

The court notes that in the Third Amended Complaint the plaintiff makes general

averments about a "failure to properly supervise correctional officers and/or

employees," including "failure to correct known deficiencies in the grievance

procedures; failing to adequately instruct, monitor and supervise employees; failing to

provide protection from the threat of assault, and failure to prevent injury/assault upon

Plaintiff."  (Compl. at ¶ 33).  In addition, in that pleading plaintiff similarly alleges that

defendants CDOC and CCA "have established a policy, pattern and/or practice of not maintaining or inadequately supervising their employees in order to properly provide protection to inmates in their custody" and "have a policy of not promptly and adequately investigating and/or responding to articulated fears of assault and requests for protection, and thereby ratified such conduct." (Compl. at ¶¶ 26, 27). This court finds, however, that the these allegations do not plead any facts, let alone "enough facts to state a claim to relief that is plausible on its face," so as to withstand a motion to dismiss pursuant to Rule 12(b)(6). Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1974. As the Supreme Court recently stated, and as noted above, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted). Plaintiff has made no "[f]actual allegations [that are] enough to raise a right to relief above the speculative level." Id. He has failed to "'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atlantic Corp., 127 S.Ct. at 1974). In sum, the court finds that the plaintiff has made no supporting factual averments sufficient to state such a claim on which relief can be granted with

respect to the § 1983 claim against the moving defendants.  Therefore, it is recommended that the First Claim for Relief be dismissed with respect to the moving defendants.

**Remaining Defendants and Claims**

If the recommendations made above are approved, then the claims remaining would be the § 1983 claims against John/Jane Does, I-X, and the state law negligence claims against the CCA defendants and "unnamed correctional officers and employees of Defendant CCA." (Docket No. 20 at 7).  The court notes that in some of the grievances filed by plaintiff at the outset of this action, plaintiff named some individuals in the correctional facilities who were allegedly involved in the actions complained of in the Third Amended Complaint, yet none of those individuals were named in the Third Amended Complaint, nor has plaintiff moved to amend to identify the defendant John/Jane Does, I-X.  Plaintiff's § 1983 claims are governed by the two-year statute of limitations contained in § 13-80-102, C.R.S.; Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994); Merrigan v. Affiliated Bankshares of Colo., Inc., 775 F. Supp. 1408, 1411-12 (D. Colo. 1991).  Even if the court were to permit equitable tolling from the time Judge Blackburn dismissed this action on exhaustion grounds on March 22, 2006 (Docket No. 59), through April 2, 2007, when the Tenth Circuit's Mandate was filed (Docket No. 91), remanding the matter for further proceedings, more than 2 years have passed since the date of the last assault alleged in the Third Amended Complaint (September 1, 2004) (See Docket No. 20, ¶¶ 21-22).  Therefore, the statute of limitations has run with respect to the John/Jane Doe, I-X, defendants.  It is thus

recommended that the § 1983 claims against defendants John/Jane Does, I-X, be dismissed *sua sponte.* See <u>Fogle v. Pierson</u>, 435 F.3d 1252, 1258 (10th Cir. 2006) ("A complaint may be dismissed *sua sponte* under § 1915 based on an affirmative defense–such as statute of limitations-'only when the defense is obvious from the face of the complaint and no further factual record is required to be developed."), <u>cert. denied</u>, 127 S.Ct. 675 (2006). <u>See also</u> <u>Garrett v. Fleming</u>, 362 F.3d 692 (10th Cir. 2004) (Prisoner substitution of named defendants for the original unknown "John Doe" defendants amounted to adding a new party. Complaint dismissed as barred by applicable statute of limitations. Rule 15(c)'s "relation back" provision because a plaintiff's lack of knowledge of the intended defendant's identity is not a "mistake concerning the identity of the proper party" within the meaning of Rule 15(c)(3)(B)."); <u>Tapia-Ortiz v. Doe</u>, 171 F.3d 150, 151-52 (2d Cir. 1999) ("Although [plaintiff] filed his complaint naming defendant officers as 'John Does' within the . . . statute of limitations period, '[i]t is familiar law that "John Doe" pleadings cannot be used to circumvent statutes of limitations because replacing a "John Doe" with a named party in effect constitutes a change in the party sued.' . . . And even when a suit is brought by *pro se* litigant, 'an amended complaint adding new defendants [cannot] relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.' . . . [Plaintiff's] failure until two years after the expiration of the statute of limitations period to name specifically in his complaint the officers who allegedly violated his rights is therefore fatal to his . . . claim."); <u>Shmueli v. City of New York</u>, 2007 WL 1659210, *4 n.4 (S.D.N.Y. June 7, 2007) ("As the three-year statute of

limitations has passed, and Plaintiff has not effectuated service on "John Does 1-10," the Court, *sua sponte*, dismisses the "John Doe" defendants, without leave to amend.").

The CCA defendants assert that should this court dismiss plaintiff's § 1983 claims against defendants CCA and Warden Keith, it should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over plaintiff's state law negligence claim which is raised in Claim Two. "Where a district court has dismissed all claims over which it has original jurisdiction, 28 U.S.C. § 1367(c)(3) expressly authorizes the court to decline to exercise supplemental jurisdiction over the remaining state-law claims." Sauer v. McGraw-Hill Cos., 2001 WL 1250099, *18 (D. Colo. June 12, 2001). "Whether to exercise supplemental jurisdiction under such circumstances lies within the discretion of the court." Id. (citation omitted). The court should exercise such discretion only "in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." Id. Generally, "the balance of factors to be considered will point towards declining to exercise jurisdiction over state-law claims when the federal claims have been eliminated prior to trial." Id. (citation omitted). Furthermore, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." Id. (quotations omitted). In this case, there are no compelling reasons to exercise supplemental jurisdiction. In fact, discovery has not even been conducted yet in this case. Therefore, it is recommended that the Second Claim for

Relief be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).[4]

**WHEREFORE,** for the foregoing reasons it is hereby

**RECOMMENDED** that the Renewed Motion to Dismiss From Defendants Corrections Corporation of America and Warden Jim Keith (Docket No. 104) be granted. It is further

**RECOMMENDED** that the CDOC Defendants' Renewed Motion to Dismiss Third Amended Complaint (Docket No. 105) be granted. It is further

**RECOMMENDED** that the First Claim for Relief as against Defendants John/Jane Does, I-X, be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B) and that the court decline to exercise supplemental jurisdiction over the Second Claim for Relief and dismiss such claim without prejudice pursuant to 28 U.S.C. § 1367(c). It is further

**RECOMMENDED** that plaintiff's motion for summary judgment, which is improperly included in his "Conbined Response" [sic] (Docket No. 109 at 10), be denied.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive,**

---

[4]In the previous dismissal order, which was based on failure to exhaust, Judge Blackburn declined to exercise supplemental jurisdiction over the plaintiff's state law negligence claim. (Docket No. 59 at 5).

or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:  February 4, 2008                         <u>s/ Michael J. Watanabe</u>
          Denver, Colorado                        Michael J. Watanabe
                                                          United States Magistrate Judge